**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARCELLO CORTI, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED ON SCHEDULE "A" )<br><br>Defendants )<br> )<br> ) | Case No. 1:26-cv-04839<br>Judge Manish S. Shah<br>Magistrate Judge Gabriel A. Fuentes |

**DEFENDANT'S MOTION TO VACATE DEFAULT**
**AND FOR DISMISSAL OF THE ACTION**

Defendant No. 10, Modeoutfit.com ("Defendant"), by and through its undersigned counsel, hereby moves this Court, pursuant to Rules 12(b)(2), 12(b)(5), and 60(b)(4) of the Federal Rules of Civil Procedure, for an Order: (i) vacating the default judgment entered against Defendant as void for lack of proper service of process and personal jurisdiction; and (ii) dismissing the Complaint as against Defendant for insufficient service of process and lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

   I.    THE DEFAULT JUDGMENT MUST BE VACATED PURSUANT TO RULE 60(b)(4)......2

   II.   THE CLAIMS AGAINST DEFENDANT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(5) .....................................................2

      A.   Fed. R. Civ. P. Rule 4(f)(1) Mandates that Service be Performed by "Internationally Agreed Means of Service"..................................................................................................4

      B.   The Hague Convention Provides the Exclusive and Preemptive Framework for International Service of Process ...................................................................................................5

      C.   Courts in the United States May Not Permit Service in a Manner Inconsistent with Federal Treaty ...............................................................................................................8

      D.   China has Objected to Service via Postal Channels which Extends to E-Mails.........................9

      E.   China has Explicitly Stated that Its Objection to Postal Service Extends to Service via E-Mail 10

      F.   The Court's Prior Decision on Plaintiff's *ex parte* Application was Determined Without Benefit of Opposition..................................................................................................10

      G.   The Seventh Circuit Has Now Held That Service by Email on Defendants Located in China Is Prohibited by the Hague Service Convention .......................................................11

   III.  PLAINTIFF FAILED TO EXERCISE REASONABLE DILIGENCE TO ASCERTAIN DEFENDANT'S ADDRESS, RENDERING THE HAGUE SERVICE CONVENTION APPLICABLE...............................................................................................................13

   IV.  THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT .15

   V.   UPON VACATING THE DEFAULT JUDGMENT, THE COMPLAINT SHOULD BE ALSO DISMISSED BECAUSE PLAINTIFF CANNOT STATE A COPYRIGHT CLAIM FOR WHICH RELIEF MAY BE GRANTED .......................................................................17

CONCLUSION ...............................................................................................................20

CERTIFICATE OF SERVICE...........................................................................................iii

CERTFICIATE OF COMPLIANCE....................................................................................iii

ii

## PRELIMINARY STATEMENT

This motion presents a straightforward question: whether a default judgment may stand where the defendant was never properly served, where the Court lacks personal jurisdiction, and where the Complaint fails to state a plausible claim for relief. The answer to each question is no.

The Seventh Circuit has now squarely held that service by email upon defendants located in the People's Republic of China is prohibited by the Hague Service Convention. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, 2026 U.S. App. LEXIS 15376 (7th Cir. May 29, 2026). Because Plaintiff attempted service exclusively through an impermissible method, the default judgment entered against Defendant No. 10 is void and must be vacated pursuant to Rule 60(b)(4).

Even if service had been proper, dismissal is independently warranted because this Court lacks specific personal jurisdiction over Defendant. This case concerns an alleged infringement of artwork created by an Italian author, first published in Italy, by a Chinese e-commerce company. Plaintiff's sole jurisdictional allegation is a single purchase into Illinois. That isolated transaction is insufficient to satisfy the Due Process Clause, particularly where this otherwise foreign dispute bears little meaningful connection to Illinois and exercising jurisdiction would not comport with traditional notions of fair play and substantial justice.

Finally, the Complaint fails to state a claim upon which relief can be granted. Plaintiff relies upon a copyright registration obtained nearly fourteen years after the work's first publication and therefore is not entitled to the statutory presumption of validity under 17 U.S.C. § 410(c). Plaintiff likewise fails to plausibly plead ownership of a valid copyright or identify the protectable expression allegedly infringed by Defendant, instead relying on generalized and conclusory

1

allegations common to every defendant named in this Schedule A action.

For each of these independent reasons, the default judgment should be vacated and the Complaint dismissed with prejudice.

## I.     THE DEFAULT JUDGMENT MUST BE VACATED PURSUANT TO RULE 60(b)(4)

Pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, a court must vacate a judgment that is void. A default judgment entered without proper service of process is void because the court lacks personal jurisdiction over the defendant. Accordingly, where service of process is ineffective, relief under Rule 60(b)(4) is mandatory, not discretionary. *See be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) ("When a district court enters a default judgment without personal jurisdiction over the defendant, the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that judgment.").

Here, Plaintiff never properly served Defendant in accordance with the Hague Service Convention. Instead, Plaintiff purported to effect service solely by email on a defendant located in the People's Republic of China. As discussed below, that method of service was ineffective as a matter of law. Because Defendant was never properly served, this Court never acquired personal jurisdiction over Defendant, rendering the default judgment void and requiring that it be vacated pursuant to Rule 60(b)(4).

## II.     THE CLAIMS AGAINST DEFENDANT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(5)

Defendant was purportedly served by "electronic publication" or by "e-mail." (ECF. No. 20-1, ¶3-5).

Defendant is a Chinese entity and China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Because service in this case required the transmission of judicial documents abroad, the Hague Convention supplies the governing framework for service of process. The Hague Convention establishes the exclusive mechanisms for service among contracting states and preempts inconsistent methods of service. By the plain language and structure of the Hague Convention, a form of service not explicitly permitted is barred unless agreed to by the subject country.

As held by the Seventh Circuit, the Hague Convention strictly limits when electronic service may be used in actions involving signatory countries. Under the Convention's structure, service through "postal channels" under Article 10 is the only provision that could potentially encompass service by electronic mail. But Article 10 applies only where the destination state has affirmatively declined to object to such methods. Because China has expressly objected to service through postal channels under Article 10, courts have consistently held that service by e-mail on parties located in China is prohibited under the Hague Convention.

While Federal Rule of Civil Procedure 4(f) permits service of process on individuals located abroad through certain alternative means, a court may only order other means so long as they are "not prohibited by international agreement." Accordingly, where the defendant is located in a country that is a signatory to the Hague Convention, Rule 4(f) does not authorize courts to devise independent methods of service outside that framework. Instead, any alternative method of service permitted under Rule 4(f) must be consistent with—and allowed by—the Hague Convention itself. This position is further reinforced by the Ministry of Justice's explicit statements that China's objection to postal service under Article 10 extends to electronic methods of service, including service by e-mail. *See* Exhibit A.

For these reasons, service of process on Defendant has not been sufficient and this action must be dismissed.

### A. Fed. R. Civ. P. Rule 4(f)(1) Mandates that Service be Performed by "Internationally Agreed Means of Service"

Fed. R. Civ. P. Rule 4(f) provides:

"Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
   (C) unless prohibited by the foreign country's law, by:
       (i) delivering a copy of the summons and of the complaint to the individual personally; or
       (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders."

Both China and the United States are "Contracting States" of the Hague Convention.[1]

Therefore, service on Defendants in China, in compliance with Fed. R. Civ. P. Rule 4(f)(1), must be performed "by any internationally agreed means of service" must be in compliance with the Hague Convention.

Service on a Defendant in China, in compliance with Fed. R. Civ. P. Rule 4(f)(3), only permits service via a form "not prohibited by international agreement."

---

[1] *See* https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

4

**B. The Hague Convention Provides the Exclusive and Preemptive Framework for International Service of Process**

The Hague Convention is a comprehensive and carefully calibrated international treaty that governs service of process in signatory countries and, where applicable, preempts alternative methods of service under domestic law. By setting forth specific, enumerated means of service and permitting only those additional methods to which a destination state has affirmatively consented, the Convention establishes an exclusive framework that displaces unilateral or court-created service mechanisms—such as service by e-mail—unless the receiving country has expressly authorized such methods under the Convention's terms.

Article 2 of the Hague Convention provides:

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organise the Central Authority in conformity with its own law.

Article 3 of the Hague Convention provides:

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality. The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

Article 5 of the Hague Convention provides:

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily. If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

Article 8 of the Hague Convention provides:

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.  Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

Article 9 of the Hague Convention provides:

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.  Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

Article 10 of the Hague Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad[2],
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Article 11 of the Hague Convention provides:

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Article 14 of the Hague Convention provides: "Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels."

Article 19 of the Hague Convention provides:

To the extent that the internal law of a Contracting State permits methods of

---

[2]    China opted out of Section (a) of Article 10 by filing an objection.  *See* https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*See* https://www.hcch.net/en/instruments/specialised-sections/service.

The plain texts of the Hague Convention make it very clear how the Hague Convention is structured. First, the authorized method of service of process is specified under Article 5 by service through a "Central Authority" designated pursuant to Article 3 in each "Contracting State." *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275, 137 S. Ct. 1504, 1508 (2017) (finding that "[t]he primary innovation of the Hague Service Convention…is that it "requires each state to establish a central authority to receive requests for service of documents from other countries").

Second, each "Contracting State" is only permitted to allow additional methods of service specified under Article 8 (service through diplomatic and consular agents), Article 9 (service through consular channels), Article 10 (service through postal channels and judicial officers), and Article 11 (other methods of service mutually agreed upon) upon other Contracting States that opt in or do not opt out of these Articles. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275–76, 137 S. Ct. 1504, 1508 (2017).

Third, any difficulties in connection with the service of process must be "settled through diplomatic channels" pursuant to Article 14.

Fourth, Article 19 allows a "Contracting State" the option to unilaterally permit additional methods of service of process "coming from abroad," but no Article allows any "Contracting State" the option to unilaterally permit additional methods of service of process "going abroad." *See Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020).

Accordingly, the only "other means" of service of process "not prohibited by [the Hague Convention]" that a court may order pursuant to R. Civ. P. Rule 4(f)(3) is limited to means of

7

service allowed under Article 8, Article 9, Article 10, Article 11 and Article 19.

In short, the Hague Convention is a comprehensive and carefully calibrated international treaty that governs service of process in signatory countries, preempts alternative methods of service. The Hague Convention is *not* drafted in a way to allow all possible methods of service by default, and then "prohibit" specific types of methods of service.  Rather the Hague Convention is drafted such that email service is prohibited *unless* the Country in question permits it under Article 11.

### C.  Courts in the United States May Not Permit Service in a Manner Inconsistent with Federal Treaty

To the extent that Plaintiff argues that service via email is permitted under Fed. R. Civ. P. Rule 4(f)(3), "Rule 4 [cannot] authorize service of process in … a manner inconsistent with a federal treaty."  *Harris v. Browning-Ferris Industries Chemical Services, Inc.*, 100 F.R.D. 775, 777–78 (M.D. La. 1984) (explaining that "[b]ecause the Hague Convention is specific as to how service is to be made in a foreign country and the Federal Rules are general and designed to cover all circumstances, the Court finds that the provisions of the Hague Convention must control the manner of service" in an action where the Hague Convention applies); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022) ("Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email. And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.").

Therefore, by definition, the Hague Convention prohibits all other methods of services not

referenced. *See e.g. Water Splash, Inc. v. Menon*, 581 U.S. 271, 273, 137 S. Ct. 1504, 1507 (2017) (holding that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies"); *Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, *6 (S.D.N.Y. 2023) (stating that "[o]mission of a particular method of service from the Convention cannot be read to implicitly authorize that method").

As China has *not* consented to service via e-mail, it is therefore impermissible for a party located in China to be served via email.

### D. China has Objected to Service via Postal Channels which Extends to E-Mails

In addition, China has objected to service via "postal channels" which has been interpreted to include e-mails.

As mentioned, Article 10 of the Hague Convention allows for service "by postal channels" so long as the "State of destination does not object." China has opted out of Section (a) of Article 10 by filing an objection. *See* https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

Consequently, there are many well-reasoned precedents across districts holding that therefore service in China via e-mail is prohibited.

In *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022), for instance, plaintiff was a "global entertainment company" that brought infringement actions against a number of companies including defendants located in China. In a lengthy, and well-reasoned opinion, the District Court noted that many Courts have held "Articles 11 and 19 of the Convention provide some support to the wholesale preclusion of email as a method of service."

The District Court noted that it "need not determine" whether the Hague Convention precludes email entirely because *in addition*, China has objected to service via postal channels and

9

therefore this "necessarily encompass an objection to service via email."

**E. China has Explicitly Stated that Its Objection to Postal Service Extends to Service via E-Mail**

If there is any doubt that postal service is intended to include email service, attached as **Exhibit A** is a notice from the Ministry of Justice of the People's Republic of China, dated March 21, 2025 further emphasizing this issue.

With respect to the question: "1. May foreign judicial authorities or individuals directly serve documents on parties located in China via international mail, fax, email, etc.?" the Ministry of Justice explicitly states: "Answer: No. Pursuant to China's Civil Procedure Law, foreign judicial authorities or individuals may not directly serve documents on parties located in China. Instead, they must submit a request to the Ministry of Justice or the Ministry of Foreign Affairs through the channels provided under applicable treaties or diplomatic channels. The documents will then be served by the People's Court of China. When China acceded to the Hague Service Convention, it made a reservation to Article 10, objecting to service in China by postal channels. Service by mail includes traditional mail, courier services, email, fax, and other methods."

This authoritative statement confirms that Plaintiff's attempted service by e-mail is impermissible. China's Ministry of Justice expressly interprets China's Article 10 reservation to extend beyond traditional mail to include "courier services, email, fax, and other methods," making clear that electronic service is not permitted.

**F. The Court's Prior Decision on Plaintiff's *ex parte* Application was Determined Without Benefit of Opposition**

Even though this Court previously granted Plaintiff's *ex parte* application to serve process by email, Defendants respectfully submit that the Complaint must be dismissed for insufficient

service pursuant to Fed. R. Civ. P. Rule 12(b)(5). *See Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827–28 (granting the defendants' motion to dismiss on the ground that service of process by email was prohibited by the Hague Convention, even though the court had previously granted the plaintiff's *ex parte* motion to serve the defendants by email; reasoning that the order granting the plaintiff's *ex parte* motion "does not withstand scrutiny under full adversary briefing").

G. **The Seventh Circuit Has Now Held That Service by Email on Defendants Located in China Is Prohibited by the Hague Service Convention**

The Seventh Circuit recently addressed this precise issue in *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, 2026 U.S. App. LEXIS 15376 (7th Cir. May 29, 2026).

There, as here, the plaintiff brought a Schedule A trademark action against Chinese e-commerce defendants and obtained leave to serve the defendants by email pursuant to Rule 4(f)(3). After the district court entered a default judgment, one defendant appeared and moved to vacate the judgment under Rule 60(b)(4), arguing that service by email violated the Hague Service Convention and therefore deprived the district court of personal jurisdiction.

The Seventh Circuit agreed that a Rule 60(b)(4) motion was the proper vehicle to challenge a default judgment predicated upon ineffective service and undertook a comprehensive analysis of the Hague Service Convention. The court began by explaining that Article 1 makes the Convention applicable whenever there is occasion to transmit judicial documents abroad for service, unless the defendant's address is not known. It further held that, where the Convention applies, it provides the exclusive permissible methods of service, rejecting the district court's conclusion that the Convention merely prohibits certain methods while leaving all other

11

unenumerated methods available. According to the Seventh Circuit, the text, structure, and operation of the Convention demonstrate the opposite—that the Convention prescribes the permissible methods of service and excludes methods not authorized by its provisions.

Turning to email service, the Seventh Circuit observed that no provision of the Hague Service Convention expressly authorizes service by email. Although some courts had debated whether email could constitute service through "postal channels" under Article 10(a), the Seventh Circuit found it unnecessary to resolve that question because China has formally objected to service under Article 10. Accordingly, even assuming arguendo that email could otherwise qualify as a postal channel, China's objection foreclosed reliance upon Article 10(a). Because Plaintiff identified no other provision of the Convention authorizing email service, the court held that "the Hague Service Convention prohibits service by email in China." The court therefore reversed the order denying the Rule 60(b)(4) motion and remanded for the district court to determine the threshold factual question whether the defendant's address was "not known," such that the Convention applied in the first instance.

The Seventh Circuit's decision is consistent with every federal court of appeals to have squarely addressed the issue. In *SEC v. Lahr*, No. 22-2497, 2024 LX 213803 (3d Cir. July 24, 2024) (nonprecedential), the Third Circuit held that email service upon a defendant in Switzerland was not authorized by the Hague Service Convention and that the resulting default judgment had to be vacated because service was ineffective. The Third Circuit further rejected the notion that Rule 4(f)(3) permits courts to authorize methods of service prohibited by an applicable international agreement. Likewise, in *Smart Study Co. v. Acuteye-Us*, the Second Circuit recognized that Rule 4(f)(3) does not authorize service in a manner prohibited by the Hague Service Convention and reaffirmed that the Convention's procedures are mandatory whenever it

12

applies. The Seventh Circuit's decision in *Kangol* therefore does not announce a novel rule but instead aligns with the uniform appellate authority interpreting the Hague Service Convention and Rule 4(f)(3).

Thus, the Seventh Circuit did not announce a novel rule. Rather, it joined the growing appellate consensus that where the Hague Service Convention governs service abroad, Rule 4(f)(3) cannot be used to authorize service by email in contravention of the Convention or a contracting state's objections. Because Plaintiff employed precisely the same defective method of service here, the default judgment is void and must be vacated pursuant to Rule 60(b)(4).

### III. PLAINTIFF FAILED TO EXERCISE REASONABLE DILIGENCE TO ASCERTAIN DEFENDANT'S ADDRESS, RENDERING THE HAGUE SERVICE CONVENTION APPLICABLE

The sole circumstance in which the Hague Service Convention does not apply is where "the address of the person to be served with the document is not known." Hague Service Convention, art. 1. However, a plaintiff cannot avoid the Convention merely by professing ignorance of a defendant's address. If that were sufficient, the exception would swallow the rule. Rather, a plaintiff must exercise reasonable diligence to ascertain a defendant's address before resorting to alternative service. *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021); *Progressive Se. Ins. Co. v. J & P Transp.*, No. 1:11-cv-137, 2011 U.S. Dist. LEXIS 73946, at *6 (N.D. Ind. July 8, 2011).

Here, Plaintiff's application states only in general terms that "[p]ast investigation and discovery of online marketplace accounts reveals that Defendants appear to have provided false physical address information to the online platforms in order to avoid full liability and rely primarily on electronic communications to communicate with their third-party service providers

and customers." (Dkt. 14-2 ¶ 2.) Plaintiff then asserts, again in broad generalities, that "[a]n investigation of the internet stores operating under the Defendant Internet Stores identified in Amended Schedule A to the Complaint shows that few, if any, provide a reliable physical address on the internet store." (Dkt. 14-2 ¶ 3.)

Conspicuously absent from Plaintiff's motion is any evidence of an investigation directed at Defendant No. 10, Modeoutfit.com. Plaintiff does not identify any specific efforts undertaken to ascertain this Defendant's physical address, nor does Plaintiff explain why any readily available avenues of investigation proved unsuccessful. Instead, Plaintiff relies exclusively upon generalized assertions concerning Schedule A defendants as a group. Such conclusory allegations fall well short of the individualized showing required to invoke Article 1's narrow "address not known" exception.

Courts have consistently held that a plaintiff may not rely upon Article 1 merely because a defendant's address is not readily apparent or publicly available. The reasonable diligence inquiry is necessarily fact-specific. *Spin Master, Ltd. v. Aomore-US*, 2024 U.S. Dist. LEXIS 106694, at *15 (S.D.N.Y. June 17, 2024). Moreover, reasonable diligence ordinarily requires a plaintiff to pursue multiple avenues of investigation before claiming that a defendant's address is unknown. *See, e.g.*, *Hyper Ice, Inc. v. E Hung Tat Int'l Grp. Co., Ltd.*, No. 25-CV-3643 (VSB) (JW), 2025 U.S. Dist. LEXIS 259088, at *12 (S.D.N.Y. Dec. 15, 2025) (observing that reasonable diligence ordinarily requires "multiple modes of attempted contact").

For example, in *Moonbug Ent. Ltd. v. ABDG Store*, No. 22-CV-2386 (RA), 2025 U.S. Dist. LEXIS 123716, at *8 (S.D.N.Y. June 27, 2025), the court found reasonable diligence where plaintiff's Beijing counsel reviewed defendants' online storefronts, verified the information through a major Chinese search engine, and searched a Chinese corporate registration database

14

compiling records from the National Enterprise Credit Information Publicity System, the China Copyright Protection Center, the China National Intellectual Property Administration, the China Judicial Documents Website, and other official governmental sources.

By contrast, in *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1390–91 (S.D.N.Y. 2022), the district court distinguished those cases involving extensive investigative efforts—including review of websites, telephone calls, in-person visits, subpoenas, and other investigative measures—from the plaintiff's comparatively cursory efforts. The court held that merely reviewing the defendants' online storefronts and concluding that the displayed addresses were incomplete or false did not constitute reasonable diligence under Article 1.

Plaintiff's efforts here are even more deficient than those rejected in *Smart Study*. Plaintiff does not identify any investigation directed specifically at Defendant No. 10, much less multiple avenues of inquiry. Instead, Plaintiff relies solely upon generalized statements regarding Schedule A defendants as a whole and the absence of reliable addresses on their websites.

Such a perfunctory investigation cannot satisfy Article 1's reasonable diligence requirement. Because Plaintiff failed to demonstrate that Defendant's address was truly "not known," the Hague Service Convention governed service in this case.

## IV. THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT

In addition to the issue of service, the default should be vacated, and the Complaint dismissed pursuant to Rule 12(b)(2) because Plaintiff has failed to establish that this Court may exercise specific personal jurisdiction over Defendant.

"For a defendant to be subject to specific personal jurisdiction under the Due Process Clause, … the exercise of personal jurisdiction must comport with traditional notions of fair play

15

and substantial justice." *Yinnv Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026). The forum state's interest in adjudicating the dispute is one of the factors relevant to determining whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Pierson v. Nat'l Inst. for Labor Rels. Research*, No. 15 C 11049, 2016 U.S. Dist. LEXIS 144002, at *30 (N.D. Ill. Oct. 17, 2016) (finding that Illinois had "little interest" in adjudicating a dispute between a Virginia plaintiff and a Virginia defendant).

This case concerns a single test sale by a Chinese e-commerce company to an Illinois address. The dispute itself is otherwise entirely foreign. Plaintiff's own copyright registration identifies the author and claimant as Marcello Corti, an Italian national, and further reflects that the work was first published in Italy. Defendant is a Chinese e-commerce merchant. Thus, this litigation principally concerns an alleged infringement of an Italian author's work by a Chinese company, with the sole alleged connection to Illinois being one investigator-initiated purchase.

Plaintiff will likely rely upon *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), for the proposition that even a single sale may suffice to establish specific personal jurisdiction. That decision, however, is readily distinguishable.

*NBA Properties* involved the alleged infringement of trademarks owned by NBA Properties, Inc., whose marks are inextricably associated with Chicago and Illinois. Moreover, because the case concerned trademark infringement, it implicated Illinois's distinct interest in protecting consumers from counterfeit goods that may be of diminished quality and in preventing consumer confusion in the marketplace. Indeed, Chicago is home to one of the NBA's most iconic franchises—the Chicago Bulls—and one of the sport's most recognizable figures, Michael Jordan.

Those same consumer-protection concerns are completely absent from this case. Unlike trademark law, copyright law protects an author's original expression rather than serving as an

16

indicator of the source or quality of goods. This action does not concern allegations that Illinois consumers were deceived into purchasing counterfeit goods under false pretenses. Rather, it concerns an alleged unauthorized reproduction of artwork created by an Italian artist and allegedly sold by a Chinese merchant. Illinois likewise has no comparable sovereign interest in protecting the copyrights of a foreign author whose works were created abroad. The dispute is fundamentally between an Italian copyright holder and a Chinese merchant, not between Illinois consumers and a seller of counterfeit goods. Illinois's sovereign interest in adjudicating such a dispute is therefore substantially weaker than in *NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022).

No Illinois resident is alleged to have suffered any injury as a result of Defendant's conduct. In fact, if Illinois has incurred any harm at all, it is solely due to the expenditure of this Court's limited judicial resources occasioned by Plaintiff's decision to litigate an otherwise foreign dispute in this forum.

Under these circumstances, exercising specific personal jurisdiction based upon a single transaction orchestrated by Plaintiff would be fundamentally unfair and inconsistent with the Due Process Clause's requirement that the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice.

## V. UPON VACATING THE DEFAULT JUDGMENT, THE COMPLAINT SHOULD BE ALSO DISMISSED BECAUSE PLAINTIFF CANNOT STATE A COPYRIGHT CLAIM FOR WHICH RELIEF MAY BE GRANTED

Should the Court decline to dismiss the Complaint for lack of personal jurisdiction based upon insufficient service of process or lack of personal jurisdiction, the Court should alternatively dismiss the Complaint pursuant to Rule 12(b)(6).

To state a claim for copyright infringement, a plaintiff must plausibly allege "(1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff has adequately alleged neither element.

With respect to ownership, Plaintiff relies almost exclusively upon copyright registration certificates. Although a certificate of registration may constitute prima facie evidence of a valid copyright under 17 U.S.C. § 410(c), that presumption applies only where registration is made within **five years** after the work's first publication. Here, the registration upon which Plaintiff relies against Defendant No. 10—Copyright Registration No. VA 2-391-094—reflects that the work was completed in 2010, first published in Italy on March 5, 2010, and not registered until January 10, 2024, nearly **fourteen years later**.

Accordingly, the registration is not entitled to the statutory presumption of validity afforded by § 410(c).

Nor do Plaintiff's allegations cure that deficiency. In his declaration, Marcello Corti states that he worked as a freelance artist creating artwork for his "customers." (Dkt. 24-4 ¶ 3.) However, Mr. Corti never identifies the customer for whom Copyright Registration No. VA 2-391-094 was created, nor does he state whether the work was created on his own behalf or as a work made for hire. If the artwork was created as a work made for hire, the copyright would belong to the commissioning party rather than Mr. Corti. Plaintiff therefore fails to allege sufficient facts demonstrating ownership of the asserted copyright.

The validity of Plaintiff's asserted copyright is particularly suspect because the work depicts Santa Claus, his sleigh, and reindeer—subjects that have been illustrated by countless artists for well over a century and are ubiquitous in the public domain. Copyright protection extends only to original expression, not to ideas, concepts, stock characters, or commonplace

depictions drawn from the public domain. Given the extraordinary number of artistic renditions of Santa Claus and his sleigh that predate and postdate Mr. Corti's alleged work, Plaintiff's burden to establish that Copyright Registration No. VA 2-391-094 embodies sufficiently original, copyrightable expression is especially significant. Yet, Plaintiff has offered nothing beyond a registration certificate that is not entitled to the statutory presumption of validity under 17 U.S.C. § 410(c). Under these circumstances, Plaintiff has failed to plausibly establish the existence of a valid copyright protecting the aspects of the work allegedly infringed.

Plaintiff likewise fails to adequately plead unauthorized copying. Federal Rule of Civil Procedure 8 requires a complaint to describe the claim in sufficient detail to give the defendant fair notice of what the claim is. *EEOC v Concentra Health Servs.*, 496 F3d 773, 776 (7th Cir 2007). Conclusory allegations and formulaic recitations of the elements of a cause of action are insufficient.

Here, the Complaint merely alleges in general and conclusory fashion that the Schedule A defendants copied Mr. Corti's works. (Dkt. 1 ¶ 20.) As to Defendant No. 10 specifically, Plaintiff does not identify which original elements of Copyright Registration No. VA 2-391-094 were allegedly copied, explain how Defendant purportedly copied those elements, or plead facts demonstrating substantial similarity between Defendant's product and the protectable expression embodied in the registered work.

Instead, Plaintiff impermissibly groups dozens of unrelated defendants together and relies upon generalized allegations applicable to the Schedule A defendants as a whole.

Such collective pleading fails to provide Defendant with fair notice of the claim asserted against it and falls short of the pleading standards established by Rule 8.

## CONCLUSION

For the foregoing reasons, Defendant No. 10, Modeoutfit.com respectfully request that the Court vacate the default judgment and upon vacating the default judgment, dismiss the case accordingly, and grant such other and further relief as the Court deems just and proper.

Dated: August 5, 2026

Respectfully submitted,

*/s/ Jacob Chen*
Jacob Chen
jchen@dgwllp.com
Tel: 917-983-2806
**DGW KRAMER LLP**
45 Rockefeller Plaza, 20th Floor,
New York, NY 10111

*Counsel for Defendant No. 10, Modeoutfit.com*

20

## CERTIFICATE OF SERVICE

On August 5, 2026, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Illinois, Eastern Division using the CM/ECF System which will send notification of said filing to all counsel of record.

*/s/ Jacob Chen*

## CERTFICIATE OF COMPLIANCE

Pursuant to the Court's standing procedures, Defendant conferred with Plaintiff's counsel regarding the requested relief. Plaintiff objects to this motion.

*/s/ Jacob Chen*

iii