**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARCELLO CORTI,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"<br><br>Defendants | Case No. 1:26-cv-04839<br>Judge Manish S. Shah<br>Magistrate Judge Gabriel A. Fuentes |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO VACATE DEFAULT AND FOR DISMISSAL OF THE ACTION**

Defendant No. 10, Modeoutfit.com ("Defendant"), by and through its undersigned counsel, hereby submits this Reply in support of its Motion to Vacate Default and for Dismissal of the Action (ECF No. 32).

## TABLE OF CONTENTS

**SUMMARY OF REPLY** ........................................................................................................ **1**

**I. THE DEFAULT JUDGMENT MUST BE VACATED PURSUANT TO RULE 60(b)(4) 2**

**II. PLAINTIFF'S OWN PAPERS IDENTIFY DEFENDANT'S ADDRESSES** ............ **2**

**III. PLAINTIFF FAILED TO EXERCISE REASONABLE DILIGENCE BEFORE SEEKING ELECTRONIC SERVICE, AND ITS SUBSEQUENT INVESTIGATION DOES NOT CURE THAT DEFECT** ........................................................................ **3**

A. The parties agree on the reasonable-diligence standard. .................................. 3

B. Plaintiff's original application relied upon generalized assumptions rather than an individualized investigation of Defendant. ........................................................ 4

C. Plaintiff's present criticism of the addresses does not supply the missing pre-application diligence. ....................................................................................... 5

D. Even under Plaintiff's present-focused approach, it has an obvious means of obtaining Defendant's address. ........................................................................ 5

E. Plaintiff's post-hoc explanations are weak even on their own terms. ................ 6

**IV. ADDITIONAL TIME TO SERVE DOES NOT JUSTIFY PRESERVING THE DEFAULT JUDGMENT** ................................................................................. **6**

**V. PLAINTIFF'S RELIANCE ON *NBA PROPS.* DOES NOT RESOLVE THE FAIRNESS INQUIRY** ........................................................................................ **7**

**CONCLUSION** .................................................................................................... **9**

**CERTIFICATE OF SERVICE** ............................................................................ **iii**

## SUMMARY OF REPLY

Plaintiff served Defendant by email *before* undertaking reasonably diligent, defendant-specific efforts to find Defendant's address. Plaintiff now attempts to cure that failure retroactively. Its original application relied on generalized assertions about Schedule A defendants. Its opposition relies on an investigation conducted after default judgment and after Defendant moved to vacate. That later investigation cannot supply the diligence missing when Plaintiff sought permission to serve by email.

The chronology is straightforward.

Plaintiff received PayPal records identifying Defendant's company and supplying physical addresses on May 5, 2026. Plaintiff then purported to serve Defendant by email on May 14. ECF No. 36 at 3–4. The opposition identifies no efforts to investigate those address leads before service. Instead, Plaintiff relies on an enterprise record retrieved in August. *Id.* at 9–10. Plaintiff identifies no comparable investigation undertaken in May.

Plaintiff's authorities permitting supplemental evidence do not resolve this problem. Later-submitted evidence may establish that an earlier investigation occurred. It cannot turn a later investigation into earlier diligence. The defect here is not when Plaintiff submitted its evidence. It is when Plaintiff performed its investigation.

Nor does Plaintiff's request for another opportunity to complete service justify preserving the default judgment. Future service cannot retroactively validate that judgment. The Court should vacate the judgment, quash the purported email service, and dismiss the claims without prejudice for the reasons stated in Defendant's opening Motion.

If the Court permits further service efforts, it must still vacate the judgment and allow Defendant to respond *after* lawful service has been completed.

## I. THE DEFAULT JUDGMENT MUST BE VACATED PURSUANT TO RULE 60(b)(4)

A default judgment entered without personal jurisdiction over the defendant is void, and a court may not decline to vacate such a judgment merely as an exercise of discretion. *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011).

Plaintiff argues that Defendant assumed the Hague Service Convention applied without addressing Article 1's exception for an unknown address. But Section III of Defendant's opening Motion expressly addressed that exception. It explained why Plaintiff's generalized assertions about Schedule A defendants failed to establish reasonably diligent efforts to find this Defendant's address. ECF No. 32 at 13–15. Plaintiff also concedes that email service on Defendant in China was impermissible if the Convention applied. ECF No. 36 at 2. The dispute therefore concerns whether Plaintiff established a basis for invoking the unknown-address exception.

As explained below, Plaintiff's later investigation does not establish that it exercised reasonable diligence <u>before</u> seeking electronic service. If the exception did not apply, the purported email service was ineffective and the resulting default judgment must be vacated. Plaintiff's request for another opportunity to complete service addresses how this action might proceed after vacatur. It supplies no basis to preserve a judgment entered without personal jurisdiction.

## II. PLAINTIFF'S OWN PAPERS IDENTIFY DEFENDANT'S ADDRESSES

Plaintiff admits that it obtained physical addresses before purportedly serving Defendant by email. ECF No. 36 at 3–4. Those addresses are confirmed in Defendant's supplemental declaration, which identifies the company's registered address and its CEO's residential

addresses. (Defendant Supp. Decl. ¶¶3, 6)

Plaintiff's own papers thus completely undermine its assertion that Defendant's address was "unknown." The Hague Service Convention therefore applies, and Plaintiff has already conceded that email service in China is impermissible when the Convention governs. ECF No. 36 at 2.

## III. PLAINTIFF FAILED TO EXERCISE REASONABLE DILIGENCE BEFORE SEEKING ELECTRONIC SERVICE, AND ITS SUBSEQUENT INVESTIGATION DOES NOT CURE THAT DEFECT

Putting aside that Plaintiff already possessed Defendant's address information, Plaintiff also failed to exercise reasonable diligence before seeking electronic service. Its opposition combines events from March, May, and August into a single account of its investigation. That account obscures the sequence that matters.

Plaintiff sought permission to serve Defendant by email before investigating the address leads on which it now relies. It then received additional address information from PayPal and proceeded with email service without identifying any effort to investigate those leads. The investigation conducted after judgment does not establish reasonable diligence before service.

### A. The parties agree on the reasonable-diligence standard.

As stated in the moving papers, reasonable diligence requires efforts to ascertain and verify a defendant's address before treating it as unknown under Article 1. ECF No. 32 at 13–15. A plaintiff cannot satisfy that requirement merely by professing ignorance or showing that an address is not readily apparent or publicly available. The inquiry is fact-specific and ordinarily requires pursuing multiple avenues of investigation, including available means of contacting the defendant. *Id.* (citing *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns*, 549 F. Supp.

3d 790, 796 (N.D. Ill. 2021); *Spin Master, Ltd. v. Aomore-US*, 2024 U.S. Dist. LEXIS 106694, at *15 (S.D.N.Y. June 17, 2024); *Hyper Ice, Inc. v. E Hung Tat Int'l Grp. Co., Ltd.*, No. 25-CV-3643 (VSB) (JW), 2025 U.S. Dist. LEXIS 259088, at *12 (S.D.N.Y. Dec. 15, 2025)).

Plaintiff in opposition acknowledges the same standard and cites the same authority. ECF No. 36 at 2–3. Plaintiff further recognizes that locating an address and verifying whether Defendant can be reached there are distinct steps. *Id.* at 3.

The dispute therefore concerns whether Plaintiff undertook those efforts *before* seeking electronic service, rather than *after* obtaining a default judgment.

**B. Plaintiff's original application relied upon generalized assumptions rather than an individualized investigation of Defendant.**

Plaintiff's original application did not identify reasonably diligent efforts to find Defendant's address. Counsel asserted that "[p]ast investigation and discovery of online marketplace accounts" suggested that Schedule A defendants supplied false addresses. Counsel further asserted that "few, if any," of the stores provided reliable physical addresses. ECF No. 32 at 13–14 (quoting ECF No. 14-2 ¶¶ 2–3). Neither assertion explained what Plaintiff had done to locate this Defendant or verify its address.

The opposition does not fill that gap.

Plaintiff points to its March 6 purchase and storefront screenshots that displayed no physical address. ECF No. 36 at 3. Those materials may show that an address was not displayed on the pages captured. They do not establish that Plaintiff pursued the available means of finding one. For example, a shopper browsing Amazon.com would hardly expect any product listing to display the seller's physical address. That omission does not make the seller unlocatable. It means the inquiry must extend beyond the product page. The opposition itself identifies a telephone number and an email address on Defendant's storefront, but describes no attempt to

use either to obtain a physical address before seeking electronic service. *Id.*

Plaintiff also relies on PayPal's production identifying the company, its account user, and physical addresses. But Plaintiff received that production on May 5, *after* the Court authorized electronic service on May 4. That production therefore does not establish diligence before the application. More damning is Plaintiff's failure to investigate the information PayPal supplied once it received that production. Plaintiff identifies no effort to investigate any of that information before purportedly serving Defendant by email on May 14. ECF No. 36 at 3–4. Plaintiff therefore had concrete leads in hand and proceeded with email service without following any of them.

**C. Plaintiff's present criticism of the addresses does not supply the missing pre-application diligence.**

Plaintiff *now* claims that Defendant's address is unknown based on its later investigation of the available addresses. But none of those investigative efforts is shown to have occurred before Plaintiff sought permission to serve Defendant by email.

For instance, Plaintiff relies on an enterprise record retrieved in August to argue that Defendant could not be contacted at its registered address. ECF No. 36 at 9–10. That the underlying entry was dated April does not change the fact that Plaintiff did not investigate until August. Plaintiff's present criticism of the addresses cannot supply the diligence missing from its original application.

**D. Even under Plaintiff's present-focused approach, it has an obvious means of obtaining Defendant's address.**

Even if the inquiry were whether Defendant's address is unknown *now*, Plaintiff could simply ask Defendant's counsel. It is Plaintiff's burden to exercise reasonable diligence, not Defendant's obligation to volunteer an address. Asking counsel for that information would be a

bare minimal investigative step. Yet Plaintiff faults Defendant for not supplying an address while identifying no request to counsel for one. ECF No. 36 at 5–7.

Plaintiff cannot establish reasonable diligence while leaving that obvious avenue unexplored.

**E. Plaintiff's post-hoc explanations are weak even on their own terms.**

Plaintiff's later explanations also fail to justify abandoning the available address leads.

A subdivided suite, a shared telephone number, or an address in a different province does not establish that Defendant cannot be reached there. Nor does an unsuccessful search on a mapping or food-delivery platform establish that an address is fictitious or unusable for service. See ECF No. 36 at 4–5. Those circumstances call for further inquiry, not an assumption that inquiry would be futile.

For instance, Plaintiff identifies no attempt to send documents to any of the available addresses, no returned mail, and no failed delivery. Plaintiff acknowledges possessing physical addresses but identifies no investigation of those addresses before service. *Id.* at 3–5. Nor does the registry entry concerning the registered premises establish that the separate PayPal addresses are unusable. Plaintiff's later reasons for questioning those addresses do not establish that reasonable efforts to reach Defendant there would have failed.

On this record, Plaintiff has not justified invoking Article 1's exception.

## IV. ADDITIONAL TIME TO SERVE DOES NOT JUSTIFY PRESERVING THE DEFAULT JUDGMENT

Plaintiff argues that the Court should permit another attempt at service rather than dismiss the action. ECF No. 36 at 10–13. That argument does not answer the request to vacate the default judgment. Whether Plaintiff should receive additional time to serve Defendant is a separate question from whether the existing judgment is void. A default judgment entered

without personal jurisdiction must be vacated. *be2 LLC*, 642 F.3d at 557.

Plaintiff's proposed alternatives confirm that distinction. Plaintiff asks to renew its application for electronic service or serve Defendant through its U.S. counsel. ECF No. 36 at 11–12. Those proposals concern future service. Neither establishes that Defendant was properly served before judgment. Likewise, authorities permitting further service efforts do not establish that a judgment entered without valid service may remain in force while the plaintiff cures the defect.

Plaintiff also emphasizes that Defendant has appeared through counsel and can present its defenses. But actual notice does not substitute for legally effective service. *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Defendant's appearance to challenge the judgment does not retroactively validate the service on which that judgment rests.

The Court must therefore vacate the default judgment regardless of whether it permits further service efforts. If the Court allows Plaintiff another opportunity to serve, Defendant must receive an opportunity to respond after lawful service. Additional time for Plaintiff cannot justify leaving Defendant bound by a judgment entered before valid service occurred.

## V. PLAINTIFF'S RELIANCE ON *NBA PROPS.* DOES NOT RESOLVE THE FAIRNESS INQUIRY

As anticipated in the moving papers, Plaintiff relies on *NBA Props.* to argue that the Illinois purchase resolves the jurisdictional inquiry. ECF No. 36 at 15–17. But *NBA Props.* involved trademark infringement, and its fairness analysis expressly relied on protecting Illinois consumers: "Illinois no doubt has an interest in protecting its consumers from purchasing fraudulent merchandise." *NBA Props.*, 46 F.4th at 627. Plaintiff's response overlooks the significance of that stated interest.

The distinction between trademark and copyright protection explains why that interest matters. "Copyright law protects the creative expression of ideas, while trademark law ensures the integrity of market identifiers and prevents unfair competition." 1 *Representing Start-Ups and Emerging Companies* § 9.04. Trademark law's "primary purpose is to prevent consumer confusion regarding the source of goods or services," while copyright law "safeguards the rights of creators over their original works." *Id.* Trademark law thus protects consumers' ability to identify a product's source and discourages sellers from passing off inferior goods under another producer's mark. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163–64 (1995).

The Supreme Court emphasized this distinction in *Dastar*: "Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003). Using Coca-Cola and Pepsi-Cola as examples, the Court distinguished consumers' reliance on a brand's identification of the producer from any belief about who first devised the product. As the Court explained, "[t]he consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically **does not care whether it is**." *Id.* at 32–33 (emphasis added).

That distinction bears directly on the forum's interest. Illinois has a strong interest in protecting its consumers from confusion about the source of goods. But *Dastar* explains why unauthorized copying does not itself establish that kind of consumer harm. A purchaser of copyrighted content receives precisely the product expected without knowing—or caring—who created the artwork it bears. Plaintiff therefore cannot equate the alleged infringement of his copyright with deception of Illinois consumers. The specific consumer-protection interest that

supported jurisdiction in *NBA Props.* has not been shown here.

## VI. DEFENDANT'S MERITS CHALLENGE IS EXPRESSLY CONDITIONAL ON VACATUR

Plaintiff argues that a pleading defect does not render the judgment void under Rule 60(b)(4). ECF No. 36 at 18. But Defendant's opening Motion expressly sought dismissal under Rule 12(b)(6) *after* vacatur, as an alternative to dismissal for insufficient service or lack of personal jurisdiction. ECF No. 32 at 17–19.

The moving papers identified deficiencies concerning ownership, originality, and the alleged copying of protected expression. Plaintiff concedes that its registration receives no automatic presumption under § 410(c). ECF No. 36 at 19. Its opposition supplies counsel's declaration but no new declaration from Corti addressing the circumstances of the work's creation or the ownership questions Defendant raised.

The work was allegedly first published in March 2010 but registered in January 2024, nearly <u>fourteen years later</u>. The certificate therefore carries no automatic presumption of validity, although the Court retains discretion to determine its evidentiary weight. Defendant maintains its pleading challenge for the reasons stated in the opening Motion.

Lastly, even if the Court declines to dismiss, Defendant submits that the ownership and protected-expression issues identified there present a meritorious defense for adjudication after vacatur, which further reinforces why vacating the judgment is warranted.

## CONCLUSION

Defendant No. 10 respectfully requests that the Court vacate the default judgment as against it, quash the purported electronic service, and dismiss the claims without prejudice for

insufficient service or lack of personal jurisdiction, or for failure to state a claim.

Alternatively, if the Court permits further efforts at service and does not dismiss the action at this time, Defendant requests that the Court vacate the judgment, establish a schedule for lawful service, and afford Defendant an opportunity to respond upon completion of service.

Dated: September 10, 2026

Respectfully submitted,

/s/ Jacob Chen
Jacob Chen
jchen@dgwllp.com
Tel: 917-983-2806
DGW KRAMER LLP
45 Rockefeller Plaza, 20th Floor,
New York, NY 10111

Counsel for Defendant No. 10,
Modeoutfit.com

## CERTIFICATE OF SERVICE

On September 10, 2026, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Illinois, Eastern Division using the CM/ECF System which will send notification of said filing to all counsel of record.

/s/ Jacob Chen